The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EILEEN GILLESPIE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELSCAPE LLC; EXPEDIA, INC.; and EAN.COM LP,<br><br>Defendants. | NO. 2:13-CV-00622 RSM<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR: DECEMBER 27, 2013 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM)

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## I. **INTRODUCTION**

Gillespie's efforts to articulate an Article III injury are to no avail. There is no evidence that Gillespie was *ever* personally out of pocket. She booked a hotel room for a business trip on behalf of her employer, Navigant, and Navigant reimbursed her barely two weeks later. Gillespie now claims she lost the use of her money or credit for a short time, but there is no evidence that she paid her credit card balance or was unable to make other credit card charges before Navigant reimbursed her. Moreover, no case holds that the temporary loss of use of money or credit that is fully reimbursed is sufficient to confer Article III standing.

Rather than proving a concrete injury, Gillespie asks the Court to disregard the proof that she suffered no injury. But the collateral source rule does not apply for purposes of determining Article III standing to claim injury where none exists. Indeed, it does not apply for *any* purpose in this case, because Navigant was always going to reimburse Gillespie as a matter of corporate policy. Her right to reimbursement was not triggered by an injury caused by Defendants. Lacking a concrete injury, Gillespie resorts to claiming "non-economic" injuries – *e.g.,* alleged inability to compare prices and alleged violation of the Washington Seller of Travel Statute. These theories also fail because all of her claims require proof of actual damages or injury to *her* business or property; her never before alleged speculative or inchoate injuries do not suffice.

Finally, Gillespie lacks Article III standing to pursue injunctive relief. Vague speculation about unspecified future bookings is insufficient as a matter of law. Also, because she is armed with full knowledge of Defendants' practices, there is no likelihood she will suffer the same perceived "injury" again and therefore no basis for an injunction.

Gillespie's theory of standing would vastly expand federal court dockets. Millions of employees who pay and are fully reimbursed for business expenses could claim Article III standing in regard to claims that are, in substance, their employer's claims. There's a reason that Gillespie cannot cite a single case supporting her theory: it conflicts with the Constitutional requirement that federal courts exercise power only to decide cases involving "concrete" injury.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## II.  ARGUMENT

A.  **Gillespie Lacks Article III Standing Because She Suffered No Injury.**

Article III's standing standard is not "lenient" as Gillespie suggests.  Recent Supreme Court authority underscores that in an era of "frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so.  *Ariz. Christian Sch. Tuition Org. v. Winn*, ___ U.S. ___, 131 S. Ct. 1436, 1449 (2011).

1.  **Gillespie Suffered No Injury.**

The essential alleged facts are straightforward:  Gillespie booked the Marriott room for a business trip for Navigant on August 14, using a personal credit card, expecting that she would be reimbursed by Navigant.  She submitted a request for reimbursement to Navigant on August 22 – four days before she forwarded the confirmation email to her present attorney.  And, as expected, Navigant reimbursed her for that expense on August 30, within two weeks of making the reservation.  Gillespie cannot establish standing because, as courts have repeatedly and consistently held, a plaintiff who was fully reimbursed for her alleged loss prior to suing lacks Article III standing.  *See* ECF No.65 ("Mot.") at 6-7.  Gillespie breezily dismisses the cases cited in Defendants' Motion as not involving plaintiffs whose purchases caused them "lost [ ] use of [ ] credit."  ECF No. 69 ("Opp.") at 9:9-13.  That distinction is false.  By using their money for the purchases at issue, plaintiffs in those cases suffered a transitory injury (until they were reimbursed), often much greater than Gillespie's purported injury.[1]  Gillespie also contends those

---

[1] *See, e.g.*, *Berry v. Webloyalty.com, Inc.*, 517 Fed. App'x 581, 582 (9th Cir.) *cert. denied*, __ S. Ct. __ (2013) (plaintiff reimbursed for $36.00 charged to debit card; no Article III injury based on loss of use of funds prior to reimbursement); *Stanford v. Home Depot USA, Inc.*, 358 Fed. App'x 816, 818-19 (9th Cir. 2009) (plaintiff complained of overcharge for permit; excess charge refunded one day after being paid; no Article III injury for loss of use of funds prior to reimbursement); *Gonzales v. Comcast Corp.*, No. 10-CV-01010, 2012 WL 10621, at *5-8, 21 (E.D. Cal. Jan. 3, 2012), *report adopted*, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012) (plaintiff alleged deceptive conduct in regard to auto payment program; overcharges refunded two months after being paid; no Article III injury); *Noonan, LLC v. Sempris*, *LLC*, No. C13-257RSL, 2013 WL 5569468 (W.D. Wash. Oct. 9, 2013) (plaintiff claimed to have been misled about terms of membership reward program; fees for program fully refunded; no Article III injury); *In re Vecco Contsr. Indus., Inc.*, 19 B.R. 69 (Bankr. E.D. Va. 1982) (general contractor was reimbursed by owner for $1.5 million in cost overruns paid to subcontractor; no Article III injury); *Holaway v. Protective Life Ins. Co.*, No.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

cases did not involve a lost opportunity to evaluate whether the transaction terms were fair. ECF No. 69, Opp. at 9:9-13. To the contrary, in all of Defendants' cited cases, the plaintiffs complained they were unwittingly subjected to unfair transactions. *See* n.1. Because they were reimbursed, however, they could not show injury-in-fact, as required to establish Article III standing. Nor can Gillespie.

### 2. **The Collateral Source Rule Does Not Apply to Establish Article III Standing.**

Gillespie argues that the Court should apply Washington's collateral source rule to exclude evidence of Navigant's reimbursement. But the collateral source rule does not apply to determine Article III standing. The collateral source rule is a matter of substantive state damages law that, if applicable, can result in the exclusion of evidence under ER 401, 402 or 403 in certain cases.[2] Thus, at most it would bar evidence of the reimbursement by Navigant only for the purpose of calculating damages. All of Gillespie's cases involve application of the collateral source rule for that specific purpose – not for determining whether Article III standing exists. The rule does *not* apply to create Article III standing that would not otherwise exist. *QST Envtl., Inc. v. Nat'l Union Fire Ins. Co.*, No. CIV.98-572, 2002 WL 1072310 (D.N.H. May 28, 2002). The *QST Environmental* court rejected use of the collateral source rule as a means to confer Article III standing. There, a contractor, ESE, was sued by a subcontractor's employee. After ESE's insurer, Illinois National, paid the costs of defense and funded a settlement with the employee, ESE sued the subcontractor's carriers for bad faith as an additional insured on those policies, seeking to recover the defense costs and settlement. In dismissing ESE's claims for lack of standing, in the face of a collateral source rule objection, the court observed: "ESE's loss in this context is not a question of damages, but one of standing. . . . The collateral source rule, relied on

---

4:07-CV-109, 2007 WL 2904162, at *1-2 (M.D. Ga. Oct. 3, 2007) (Plaintiff sued for reimbursement of unearned premium that had, in fact, been repaid prior to filing suit, albeit not when the insurance was canceled; no Article III injury because unearned premium was not reimbursed "promptly"); *Demmick v. Cellco P'ship*, No. 06-2163, 2007 WL 789040, at *5-6 (D.N.J. Mar. 13, 2007) ($1,800 overcharge on cell phone account repaid two years later; no Article III injury).
[2] *See, e.g., Hill v. Novartis Pharms. Corp.*, No. 1:06-cv-00939, 2013 WL 1953753, at *15-17 (E.D. Cal. May 10, 2013); *Gresham v. Petro Stopping Ctrs.*, No. 3:09-cv-00034, 2011 WL 1748569 (D. Nev. Apr. 25, 2011).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

by ESE to avoid the standing issue, applies only to preserve an award of damages and does not affect a party's standing to litigate a claim. . . . ESE has sustained no loss from the alleged breach of contract and breach of duty of good faith and fair dealing," and such claims could only be asserted by Illinois National. *Id.* at *2 & n.2.

Further, Washington's collateral source rule would not apply in this case even for purposes of calculating damages. The rule applies only where "the injury or disability resulting from the wrongdoer's conduct triggered the plaintiff's right to receive payments from a collateral source." *Bowman v. Whitelock*, 717 P.2d 303, 306 (Wash. Ct. App. 1986). The *Bowman* Court held the collateral source rule did *not* preclude evidence of a bonus paid by the plaintiff's employer for agreeing to early retirement, where the plaintiff sought to recover loss of income allegedly due to injuries caused by the defendant. *Id.* Where a plaintiff receives a payment not due to an alleged injury, but for some independent reason, "it cannot be said . . . that the wrongdoer . . . would benefit from . . . evidence that his victim was compensated by a collateral source because of injuries he caused." *Id.* Gillespie contends the bonus payment in *Bowman* was admitted only to rebut the plaintiff's claim that her early retirement was caused by the defendant. ECF No. 69, Opp. at 7-8. But *Bowman* is not so limited; the bonus payment was also admissible to "offset Bowman's claim for damages." 717 P.2d at 306. The same logic applies here.

Gillespie cites not one case where the collateral source rule was applied to exclude evidence of an employer's reimbursement of a business expense for any purpose, much less to establish Article III standing. Her cases are classic examples of collateral source payments by insurers or other such third parties, triggered only by injuries allegedly caused by the defendant. *See Cox v. Spangler*, 5 P.3d 1265 (Wash. 2000) (industrial insurance benefit payments inadmissible); *Johnson v. Weyerhaeuser Co.*, 953 P.2d 800 (Wash. 1998) (disability payments); *Stone v. City of Seattle*, 391 P.2d 179 (Wash. 1964) (social security and veterans pension payments not admissible to mitigate the City's liability for sidewalk slip-and-fall injuries); *Heath v. Seattle Taxicab Co.*, 131 P. 843 (Wash. 1913) (pension fund reimbursement for lost wages and

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

medical expenses inadmissible to mitigate defendant's liability for auto accident); *Ciminski v. SCI Corp.*, 585 P.2d 1182 (Wash. 1978) (Medicare reimbursement for medical expenses inadmissible to offset defendant's liability in slip and fall case); *Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191 (Wash. Ct. App. 1997) (reimbursement by crop insurer not admissible to mitigate manufacturer's liability for defective seed); *Bird v. Am. Family Mut. Ins. Co.*, No C12-1553, 2013 WL 5816497 (W.D. Wash. Oct. 29, 2013) (in bad faith claim for failure to provide coverage for car accident victim, surgery costs were compensable damages even though previously reimbursed by other carriers); *Ishikawa v. Delta Airlines, Inc.*, 343 F.3d. 1129 (9th Cir. 2003) (Oregon collateral source rule precluded admission of employer's payment of back wages to mitigate the defendant laboratory's liability for negligent urine test that cause plaintiff to be mistakenly fired from her job).

Navigant is the entity for whose benefit the expense was incurred. Gillespie was merely the conduit through which Navigant paid this expense. She has no more standing than does Gillespie's credit card processor, American Express.

### 3. Gillespie Cannot Establish Standing Based on Other Forms of Injury Not Pled in Her Complaint.

Gillespie attempts to rely upon injuries not pled in her Complaint, and seeks to amend her Complaint accordingly. Amendment is futile, however, because the other forms of injury she asserts are similarly inadequate to establish Article III standing.

#### a. Temporarily Reduced Credit.

Gillespie contends that she was injured by a "loss of credit" while the charge was pending on her credit card. But she cites only one clearly distinguishable case in which "loss of credit" is articulated as Article III injury. *See Rubio v. Capital One Bank,* 613 F.3d 1195 (9th Cir. 2010).[3]

---

[3] Gillespie's other cases have no bearing on whether a transitory and de minimis reduction of available credit for only two weeks, rectified long before suit was filed, constitutes Article III injury. In *San Diego County Gun Rights Commission v. Reno*, 98 F.3d 1121 (9th Cir. 1996), the plaintiff argued that increased prices of fire arms allegedly caused by the enactment of gun control legislation constituted "economic injury" sufficient to confer standing. The court held that this injury was *inadequate* because there was no evidence that the increased prices were fairly traceable to the legislation, thus failing under the second prong of the *Lujan* standing test. *Griffin v. Allstate Ins. Co.*,

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

In *Rubio*, Capital One offered the plaintiff a fixed interest rate credit card, but later demanded that she either agree to an increased rate or pay her balance and cancel the card. If she closed the account, plaintiff would have permanently lost the credit that Capital One had extended. 613 F.3d. at 1203-04. Such a *permanent* loss of credit is an injury that is capable of redress by the court, thus satisfying the *Lujan* factors.

Gillespie alleges no such injury here. She was promptly repaid for what she charged to her card. Such a transitory and de minimis reduction in available credit that was rectified within two weeks is not an injury that is capable of redress by the court and thus does not confer Article III standing. *See, e.g.*, *Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *5, 7-8 (S.D.N.Y. June 25, 2010) (plaintiffs reimbursed for unauthorized charges to credit card caused by negligence of credit card company; no Article III injury for temporary reduction in available credit prior to reimbursement). By any yardstick, losing access to $354.08 in credit (the amount she paid Travelscape) for two weeks is a transitory and microscopic effect, and even that amount vastly overstates any reduction in credit attributed to her alleged injury.[4] Such a de minimis claim does not rise to the level of constitutional injury.

> The ancient maxims of *de minimis non curat lex* and *lex non curat de minimis* teach that **the law cares not about trifles** . . . "Applying the maxim *de minimis non curat lex*, when we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none which ought reasonably to satisfy a jury that the fact sought to be proved is established." . . . This principle frequently has been followed by the Supreme Court. *E.g., Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 . . . (1992).

*Skaff v. Meridien N. Am. Beverly Hills, LLC,* 506 F.3d 832, 839-840 (9th Cir. 2007) (citations

---

108 Wn. App. 133, 29 P.3d 777 (2001) proceeded in state court, and thus did not even involve issues of Article III standing. Moreover, the alleged CPA injury was not loss of credit, but rather defense costs that an insurer had failed to pay, and fees paid to a claims handling expert to testify about the carrier's handling of the claim.

[4] Gillespie has not mustered proof of even that tiny injury for there is no evidence that she was unable to make other credit card purchases during that two-week period, owing to her use of available credit for the Marriott hotel room charge. Moreover, her complaint is actually focused on a small fraction of that charge. Her "injury" is not what she paid for the room, or even the taxes on the room that comprise most of the $55.08 for Tax Recovery Charge and Service Fee. She does not even take issue with most of the portion that is the Service Fee, but rather only that portion of the Service Fee that exceeds what she contends was the value of the reservation service she received – *i.e.,* a few pennies of the overall $354.08 charge.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 6

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

omitted) (bold emphasis added) (in an ADA case, "mere delay during correction of the problem with the shower is too trifling of an injury to support constitutional standing"); *Gonzales v. Comcast Corp.*, No. 10-cv-01010, 2012 WL 10621, at *21-22 (E.D. Cal. Jan. 3, 2012) (speculative damages of "anywhere from five cents to $1.64" are "de minimis" and do not "concretely allege[] an injury in fact relating to inadequate refunds"). "To allow a case . . . to proceed to trial—and engage in all the hearings, pretrial motion practice, and other steps which lead to trial—where the [plaintiff] . . . may seek only nominal damages would be a grand waste of judicial resources and an exercise in futility." *Cal. v. Kinder Morgan Energy Partners, L.P.*, No. 07-cv-1883, 2013 WL 314825, at *30 (S.D. Cal. Jan. 25, 2013).

Gillespie claims that she paid the credit card out of her personal checking account. But she does not allege (let alone prove) that she paid the charge *prior to* being reimbursed by Navigant. Moreover, a temporary loss of funds out of pocket prior to reimbursement is no more sufficient to confer Article III injury than a temporary reduction in available credit. Were it otherwise, then numerous cases in which a plaintiff was overcharged but then reimbursed before filing suit, thus resulting in a temporary loss of funds, would have been allowed to proceed. Instead, such claims are routinely dismissed. *See supra* n.1.

### b. **Non-economic Injuries.**

Gillespie next argues that she suffered a non-economic injury, in the form of being unable to compare the cost of booking through Travelscape to other online reservation sites or through the hotel. Of course, as a matter of law, noneconomic injuries are inadequate to support a CPA claim, which requires proof of injury to a plaintiff's business or property (*see* RCW 19.86.090), or her other claims for alleged unjust enrichment and breach of the Washington Seller of Travel Statute, which require a showing of damages. *See infra* § II.A.3.c. But more to the point: Gillespie's contention is nonsensical. Travelscape disclosed the aggregate charge for the Marriott hotel room, including the aggregate Tax Recovery Charge and Service Fee. Gillespie does not allege how Travelscape's disclosures somehow prevented her from researching what it would cost

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

to book the same room through other online services (that also "bundle" their tax recovery charges and service fees, *e.g.,* Orbitz),[5] or through the hotel (which presumably charges no service fee for reserving a room), compare the results to her Travelscape reservation, and do the simple math to determine whether she could get the same room and service at a better price elsewhere.

Such boilerplate allegations fail to establish a plausible entitlement to relief, as required under the *Twombly/Iqbal* standard.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  If factual allegations do not show entitlement to relief, that "'basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Twombly,* 550 U.S. at 558.  Amendment to make allegations that do not meet this standard is futile.

### c.  **Statutory Violations Absent Actual Injury-In-Fact.**

Gillespie argues that Defendants' alleged violation of Washington's Seller of Travel Statute, RCW 19.138, *et seq.*, establishes standing even in the absence of injury in fact, because "the actual or threatened injury required by [Article III] may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."  ECF No. 69, Opp. at 8:21-22.  But the cases Gillespie cites for this purpose do not so hold, and are readily distinguishable.

The plaintiffs in *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 796-97 (N.D. Cal. 2011), alleged that Facebook violated California Civil Code § 3344, which allowed recovery of both statutory and actual damages.  The *Fraley* court found that the plaintiffs had articulated a coherent theory of how they were "economically injured" by the misappropriation of their names and likenesses.  *Id.* at 799.  In *DeMando v. Morris*, 206 F. 3d 1300, 1303 (9th Cir. 2000), a consumer sued for violations of the Truth in Lending Act ("TILA"), which also permitted recovery of statutory damages.  Given the availability of statutory damages, the plaintiff's "loss of a statutory right . . . [constituted an] injury in fact for purposes of Article III standing."  *Id.*

---

[5] If the other services also bundle those charges, Gillespie would not have been able to compare those charges even had Travelscape broken them out separately.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

Gillespie articulates no theory by which she was economically injured, given that the expense she paid was incurred on behalf of, and fully reimbursed by, Navigant.  Further, unlike TILA, neither Washington's CPA nor Seller of Travel Statute provide for recovery of statutory damages; rather, both require proof of "injury to business or property or "actual damages."  RCW 19.86.090; RCW 19.138.280.  Unjust enrichment requires proof that a defendant received a benefit at the plaintiff's expense.  *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008).  Absent injury in fact meeting these standards, Gillespie lacks Article III standing to pursue such claims.

### 4. Gillespie's Latest Contentions Fail to Satisfy Prudential Standing Factors.

Gillespie's new allegations also fail to meet prudential standing factors.  To demonstrate prudential standing, a plaintiff must show his own injury, a close relationship between himself and the parties whose rights he asserts, and the inability of the parties to assert their own rights. *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 878 (9th Cir. 2011).  Gillespie fails to meet these criteria because she is attempting to assert claims of Navigant, and it is well able to assert its own rights.  *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976) (holder of the rights being asserted is the best advocate of those rights).[6]

Having been reimbursed, Gillespie has no meaningful stake in the outcome.  Her claim that as a "private attorney general" she need not prove individual injury (Opp. at 11) is incorrect. The CPA contemplates an individual serving as a private attorney general that she has been injured in her own right.  *See Hockley v. Hargitt*, 510 P.2d 1123, 1133 (Wash. 1973) (CPA policy is "best served by permitting *an injured individual* to enjoin future violations of RCW 19.86, even if [future] violations would not directly affect the individual's own private rights." (emphasis added)); *Lightfoot v. MacDonald*, 544 P.2d 88, 91 (Wash. 1976) (purpose of allowing individuals

---

[6] Other courts confronting this issue have reached the same conclusion. *See Allstate Ins. Co. v. Global Med. Billing, Inc.*, No. 09-14975, 2011 WL 721299, at *2-4 (E.D. Mich. Feb. 23, 2011) (where third-party reimbursed plaintiff for payments plaintiff made to defendants, plaintiff was essentially asserting rights of third party in seeking to recover those payment and thus failed to satisfy prudential standing), *aff'd* 520 F. App'x 409, 411 n.1 (6th Cir. 2013); *Indemnified Capital Invs., SA. v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1411 (7th Cir. 1993) (broker failed to meet prudential standing requirements in seeking to recover losses incurred in customer accounts).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

to act as private attorneys general is "to enlist the aid of private individuals *damaged by acts or practices which were forbidden* in the acts, to assist in the enforcement of the laws" (emphasis added)).  Having suffered no injury herself,[7] Gillespie lacks standing to assert claims for others.

Gillespie's case is built on a fiction that she, and not Navigant, suffered the loss here.  In substance, she proposes a system where any employee reimbursed for a business expense could pursue a class action based on that expenditure, without ever having to bear any actual loss.  Such an outcome would turn standing jurisprudence on its head.

### B.      Gillespie Lacks Article III Standing to Sue for Injunctive Relief.

Standing to seek injunctive relief requires proof of a threat of "injury in fact" that is actual and imminent, and not conjectural or hypothetical, *and* that it is likely that a favorable judicial decision will prevent or redress the injury.  *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).  As her Complaint lacks such allegations, Gillespie proffers a belated and self-serving claim that she "regularly travels and stays at hotels," "plans to continue to use online travel companies, including Travelscape," "will likely book through Travelscape again," and "may unknowingly book her room through Travelscape."  ECF No. 69, Opp. at 15-16 & n.4; ECF No. 71, Decl. of E. Gillespie at ¶¶ 3-5.  But such proclamations of nonspecific future plans are insufficient to establish standing.  Any such amendment is futile.  The U.S. Supreme Court long ago held that proclamations of nonspecific future plans are "simply not enough" to establish a present case or controversy regarding injunctive relief.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 (1992) (nonspecific "some day" plans to return to countries where plaintiffs wanted the Endangered Species Act to apply did not prove actual or imminent injury required by Article III); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (plaintiff's "vague desire" to return to

---

[7] The two cases cited by Gillespie were in state court and therefore neither addressed prudential Article III standing.  Had they been in federal court, the plaintiffs would have established Article III standing because, unlike Gillespie, they articulated economic injury for which they had not been compensated prior to filing suit.  In *Griffin*, the plaintiff had been injured by incurring unreimbursed litigation defense costs.  In *Wash. State Phys. Inc. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993), the plaintiff doctor alleged injury in the form of harm to his reputation and loss of the goodwill value of his medical practice.  Gillespie asserts no such injury to her business or property.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

national forests in the future was insufficient to establish imminent injury). Gillespie's "one day" or even "unknowing"[8] plan to book travel again through Travelscape, absent a specific intent to book travel via Travelscape for a specific trip, is no more concrete than the plans found wanting in *Lujan* and *Summers*.

Even if Gillespie had a specific trip she planned to book via Travelscape, she would suffer no injury because she would book the travel fully aware of Travelscape's practices. A plaintiff who knows a defendant's practices has no standing to seek an injunction related to such practices, because such knowledge precludes him from showing a likelihood of being injured in the future by those practices. *In re Intel Laptop Battery Litig.*, No. C09-02889, 2011 WL 7290487, at *2 (N.D. Cal. April 7, 2011); *see also, generally,* ECF No. 65, Mot. at 10-11 & n.6.[9] As Gillespie is now fully aware of the Defendants' practices, she lacks standing to pursue injunctive relief.

Realizing her problem, Gillespie cites a few outlier cases in which plaintiffs were deemed to have Article III standing to proceed with injunction claims under a California statute, even though they would never again purchase the offending product and therefore showed no likelihood of repeated harm.[10] Those cases are irrelevant here because, unlike Gillespie, those

---

[8] At least one court has confronted a similar allegation of the potential for unwittingly transacting business with the defendant in the future, and found it insufficient to confer Article III standing to pursue injunctive relief. *McNair v. Synapse Group., Inc.*, 672 F.3d 213, 225 n.15 (3d Cir. 2012) (allegation that plaintiff might be "fooled again and again" into doing business with the defendant because the defendant did not prominently identify itself in its promotions did not rise to the level of a likelihood of future injury sufficient to confer Article III standing).

[9] In addition to the persuasive authority discussed in Defendants' motion, *see also Laster v. T–Mobile USA, Inc.,* No. 05cv1167, 2009 WL 4842801, at *3–4 (S.D. Cal. Dec.14, 2009) (plaintiff who knew defendant collected sales tax on the retail value of a cell phone that was advertised as "free" lacked standing to seek injunction); *vacated in part on other grounds*, 446 Fed. App'x 613 (2012); *Cattie v. Wal–Mart Stores, Inc.,* 504 F. Supp. 2d 939 (S.D. Cal. 2007) (plaintiff who alleged the thread count of linens purchased from the defendant's website was lower than advertised lacked standing to seek injunctive relief because she was now aware of the thread count); *Campion v. Old Republic Home Prot. Co.,* 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012) (plaintiff did not have standing to pursue declaratory relief because he "now has knowledge of Defendant's alleged misconduct"); *Saavedra v. Eli Lily & Co.*, 2:12-CV-9366-SVW-MAN, 2013 WL 6345442 (C.D. Cal. Feb. 26, 2013) (plaintiff lacked standing to pursue injunctive relief because she now knew of side effects to taking anti-depressant medication and thus could not show threat of repeated harm).

[10] ECF No. 69, Opp. at 16 (citing *Henderson v. Gruma Corp.,* 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)); *Larsen v. Trader Joe's Co.,* No. C11-05188, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012); *Cabral v. Supple, LLC*, No. EDCV 12-00085-MWF, 2012 WL 4343867 (C.D. Cal. Sept. 19, 2012); and *Koehler v. Litehouse, Inc.,* No. CV-12-04055, 2012 WL 6217635, at *6 (N.D. Cal. Dec.13, 2012).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

plaintiffs had suffered an "injury-in-fact" because they had purchased, *on their own behalf*, the offending product/service. *See, e.g.*, *Henderson v. Gruma Corp.*, No. CV-10-04173, 2011 WL 1362188, at *4, 8 (C.D. Cal. Apr. 11, 2011). Moreover, other courts later rejected the premise of these cases that state law can alter Article III's constitutional requirements:

> Ninth Circuit law makes it clear that the plaintiff himself must demonstrate 'a real and immediate threat of immediate injury' . . . . [A]s important as consumer protection is, it is not within the Court's authority to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws. . . . "To the extent that *Henderson* and other cases purport to create a public-policy exception to the standing requirement, that exception does not square with Article III's mandate."

*Mason v. Nature's Innovation, Inc.,* No. 12CV3019, 2013 WL 1969957, at *4-5 (S.D. Cal. May 13, 2013).[11]

**C.     Gillespie's Claims Fail on the Merits Because She Can Prove No Injury or Damages.**

Alternatively, Gillespie's claims fail on the merits because she cannot prove injury as a necessary element. *See* ECF No. 65, Mot. at 13-14. Her CPA and WSOT claims require proof of injury to her business or property or actual damages, respectively. Her unjust enrichment claims asserted against all Defendants similarly require proof that the Defendants were enriched at Gillespie's expense. If any entity suffered an injury to its business or property (or actual damages) in regard to Gillespie's reservation through Travelscape, it was Navigant. The collateral source rule does not bar evidence of the circumstances under which Gillespie initially incurred this expense – *i.e.,* in furtherance of Navigant's business endeavors – or Navigant's prompt reimbursement. It was Navigant that bore the impact of Gillespie's inadequately alleged - and inexplicable - inability to compare prices, since she engaged in that inquiry on its behalf.

### III.  CONCLUSION

For all of the foregoing reasons, amendment of Gillespie's Complaint is futile, and it should be dismissed.

---

[11] *See also Dorfman v. Nutramax Labs., Inc.*, No. 13CV0873, 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) (following *Mason*); *Bohn v. Boiron, Inc.*, No. 11-C-08704, 2013 WL 3975126, at *4 (N.D. Ill. Aug. 1, 2013) (*Henderson* is not controlling or persuasive).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

DATED this 23rd day of December, 2013.

                                    BYRNES KELLER CROMWELL LLP

                                    By /s/ Bradley S. Keller
                                         Bradley S. Keller, WSBA #10665
                                    By /s/ Keith D. Petrak
                                         Keith D. Petrak, WSBA #19159
                                         Byrnes Keller Cromwell LLP
                                         1000 Second Avenue, 38th Floor
                                         Seattle, WA  98104
                                         Telephone:  (206) 622-2000
                                         Facsimile:  (206) 622-2522
                                         bkeller@byrneskeller.com
                                         kpetrak@byrneskeller.com
                                    ***Attorneys for Travelscape LLC, Expedia, Inc., and EAN.COM LP***

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 23rd day of December, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ Keith D. Petrak
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
kpetrak@byrneskeller.com

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
(NO. 2:13-CV-00622 RSM) - 14

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000